[Civ. No. 11725. Second Appellate District, Division One.—March 20, 1939.]

FLORENCE JENSEN, Respondent, v. GEORGE BERRIS, Appellant.

C. Douglass Smith for Appellant.

Russell H. Pray, Roy J. Brown and Preston W. Johnson for Respondent.

YORK, P. J.—The respondent Florence Jensen brought the instant action to recover damages suffered by her as the result of ingesting a meal served by appellant restaurateur, it being claimed that the food so served was infected with bacillus aertrycke. The complaint contained two causes of action, the first based upon the implied warranty under subdivision 1, section 1735 of the Civil Code, that the food served was reasonably fit for human consumption, and the other upon negligence. The court found in favor of appellant on the negligence count, and against him on the implied warranty, assessing damages for $700 in favor of respondent. This appeal is prosecuted from such judgment.

The record herein discloses that on October 20, 1936, respondent and five other women, all members of a pinochle club, met for luncheon at appellant's restaurant in the city of Long Beach. Mrs. Gearhart, one of said members, was the hostess for

the particular event, the club having adopted the custom for each member alternately to furnish and pay for the fortnightly entertainment and club luncheon. At the time and place in question each member individually ordered the luncheon which was then being served by appellant, the selection varying, the designated hostess for the day paying for the entire group when the bill was presented at the conclusion of the meal. Shortly thereafter respondent and three other members of the club became violently ill, respondent and two of said members requiring medical attention. Respondent was taken to a hospital and remained there four days, during which period a culture of the feces disclosed the presence therein of bacillus aertrycke.

Appellant here urges that there was no privity of contract between him and the respondent for the reason that the latter did not pay for the meal she ate and therefore is not a buyer as that term is used in subdivision 1, section 1735, *supra*.

It is now settled law in this state that the transaction between a restaurant keeper and his guest to whom he furnishes a meal for immediate consumption constitutes a sale under said section 1735, which imposes on the restaurateur the duty to furnish to patrons food reasonably fit for human consumption. (*Mix* v. *Ingersoll Candy Co.*, 6 Cal. (2d) 674, 680 [59 Pac. (2d) 144]; *Goetten* v. *Owl Drug Co.*, 6 Cal. (2d) 683, 687, 688 [59 Pac. (2d) 142].) Negligence on the part of the defendant is not a necessary ingredient of a cause of action upon such a warranty. (*Gindraux* v. *Maurice Mercantile Co.*, 4 Cal. (2d) 206 [47 Pac. (2d) 708].)

In the case of *Dryden* v. *Continental Baking Co.*, 11 Cal. (2d) 33 [77 Pac. (2d) 833], the respondent's husband (respondent being present) purchased a loaf of bread at a neighborhood grocery store for consumption by himself and his family. While eating the bread respondent swallowed ground glass which was contained therein and became ill. In objecting to the finding of the trial court in that case that there was a breach of implied warranty, the appellant baking company urged that it is indispensable to such an action that there be privity of contract, and as respondent's husband was the actual purchaser, there was no such privity and therefore there was no implied warranty to respondent as to the character or quality of the bread sold. It was

there stated by the court at page 37: "In view of our conclusion that the evidence supports the finding that appellants were negligent, we do not find it necessary to determine whether a wife may recover in an action *ex contractu* for the breach of an implied warranty in the sale of foodstuffs made to her husband. Assuming that privity is an essential element of such an action, it might well be urged that the wife, under the circumstances here disclosed, was a third party beneficiary of the contract."

In the case of *Coca-Cola Bottling Works* v. *Lyons*, 145 Miss. 876 [111 So. 305], cited by respondent, one Mrs. Lyons accompanied by her friend, Mrs. Jackson, parked their automobile in front of a drug store and ordered drinks to be brought to them. A clerk brought two bottles of coca-cola which they proceeded to drink and plaintiff, Mrs. Lyons, swallowed a quantity of broken glass which was in the bottle from which she drank. Mrs. Jackson ordered the drinks and paid for them, but a bottle was delivered to each of them. Plaintiff recovered judgment upon an implied warranty that the bottled drink was pure and wholesome. On appeal it was contended that there was no privity of contract between plaintiff and the retailer, and therefore no warranty arose in favor of the plaintiff. In affirming the judgment, the court, among other things, stated (p. 307): " . . . the purchase of two bottles of coca-cola by Mrs. Lyons and Mrs. Jackson was a joint purchase; that is, that the sale by the drug-clerk was to both of these ladies, regardless of which one ordered or paid for the drinks, the idea being that it would make no difference which one of the parties ordered the drinks; they were sold to both of the ladies, and it would not be material which one paid for them, because the contract of sale had already been made between the seller and the two purchasers, and the payment for the drinks was merely the settlement of the obligation or debt incurred by both."

From this it would appear that a separate contract was made between each member of the club and appellant restaurateur when the meal was ordered and served, and that the mere making of the contract was sufficient to give rise to the warranty of reasonable fitness. So far as payment is concerned, each member of the club entertained alternately and by so doing, paid her proportionate share of the cost of the fortnightly luncheon given by and for the

members. Having taken an order from respondent and pursuant thereto having served the food, it does not lie in the mouth of appellant to deny privity between himself and respondent because she did not individually and personally offer him the purchase price in payment of the meal.

Appellant also contends that the evidence is insufficient to sustain the finding, and the court erred in holding, that the food eaten by respondent was in an impure and noxious condition, was tainted, diseased and infected with bacillus aertrycke, and was not fit for human consumption.

The court's findings in this regard were as follows:

"III. On or about October 20th, 1936, at or about the hour of 1 o'clock P. M., plaintiff ordered and purchased a meal for immediate consumption at said restaurant so owned, operated and maintained by defendant George Berris individually and doing business under the fictitious name and style of Imperial Cafe, consisting of the following foods, to-wit: clam chowder, crackers, lettuce and tomato salad, salad dressing, salami, ravioli and spaghetti, cheese, celery, relishes, pork chops, potatoes, apple sauce, squash, Spanish sauce, bread, butter, spomonia ice cream, cake, coffee, cream, sugar, spices and condiments. At said time and place said defendant warranted that said food was reasonably fit for human consumption and that it contained no foreign substances and that it was not in an impure or noxious condition and that it was not tainted or decayed or diseased or infected in any manner whatsoever.

"IV. Plaintiff, pursuant to said warranty, ate said food and said food was not reasonably fit for human consumption and was in an impure and noxious condition and was tainted and diseased and infected with the bacillus aertrycke organism, and as a direct and proximate result thereof plaintiff was made sick, sore and lame and suffered food poisoning, abdominal pains, nausea, vomiting, diarrhea and nervous shock. By reason thereof plaintiff was generally damaged in the sum of Six Hundred Dollars ($600.00.)''

Appellant's contention with respect to this assignment of error appears to be predicated upon the fact that since the bacillus aertrycke is transmitted to a victim through a process of contamination and there was no evidence that the food eaten by respondent was contaminated at the time it was

served, the basis for the finding objected to is nothing more than an inference founded upon conjecture.

While it is true that no analysis was made of the food served to respondent because of its unavailability after the illness of respondent developed, the evidence adduced at the trial indicates that this particular organism is transmitted by contamination; that its habitat is the gastro-intestinal tract of men and animals, from which source it is transmitted in fecal matter which, either by direct contact or through a carrier, is transferred in food to the intestinal tract of the victim. Its usual incubation period is any period under twenty-four hours.

It was shown in evidence that each member of the club maintained her own home and that the group of members had not partaken of a common meal for several days prior to the one eaten in appellant's restaurant; that within twenty-four hours after said meal was eaten, four of these women suffered symptoms of food poisoning. Respondent testified that she drank only a cup of coffee for breakfast on the day of the said luncheon. Respondent's doctor testified that a bacteriological culture of the feces of respondent, as well as of Mrs. Bope another member of the club, whom said doctor also attended, revealed the presence of bacillus aertrycke in the intestinal tracts of both; that he diagnosed their illness as acute enteritis (food poisoning) due to bacillus aertrycke, and gave as his expert opinion that such illness was caused by food eaten by them at the time and place in question.

That each of the four women who became ill shortly after eating luncheon at appellant's restaurant could so contaminate her hands by contact with dishes or articles of furniture in said restaurant, as is suggested by appellant, and that she thereby transferred the bacillus to the food which she was then eating, is to say the least highly conjectural. To the contrary, the fact that the four women became ill under the facts and circumstances, herein referred to, is a strong circumstance in support of the trial court's finding.

Under the conditions existing herein, the reasonable inference to be drawn from the evidence is that the food served by appellant to respondent was unfit for human consumption. Such inference is not opposed to human experience and reason and, therefore, it cannot be disturbed by an appellate

court. (*Rideout* v. *City of Los Angeles,* 185 Cal. 426, 434 [197 Pac. 74]; secs. 1958 and 1960, Code Civ. Proc.) See, also, *Barham* v. *Widing,* 210 Cal. 206, in which it is stated at page 215 [291 Pac. 173] : "After the verdict of a jury has been fairly rendered, all the circumstances of the case, together with every reasonable inference which may be drawn therefrom, will be marshaled in support of the judgment. Because of the very subtleness of the origin and development of disease, less certainty is required in proof thereof."

The evidence is amply sufficient to sustain the findings and judgment.

For the foregoing reasons, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.