Henry Epstein, J.
Plaintiff seeks injunctive relief and an accounting as well as damages in an amount of $500,000. Findings and conclusions having been waived, the following is the court’s decision: The complaint is dismissed on the merits and judgment is rendered for defendant Radio Corporation of America (R. C. A.), with costs. Defendant Bruno-NY Inc. was not served and is not a party to this action. Plaintiff corporation is the corporate form of Philip Rose created in 1953 to produce phonograph records. While the term ‘1 copyright ’ ’ has been freely used in the course of this trial, counsel for plaintiff in his opening statement and in response to questions hy the court concedes that the gravamen of this complaint and action is unfair competition. Defendant Radio Corporation of America (R. C. A.) also produces and distributes phonograph records. The business is highly competitive and the marketing of “ cover ” records with different artists, utilizing the same songs with similar titles is well recognized.
This case revolves around two sets of records: (1) a “ Calypso ” record of plaintiff with the title “ Banana Boat Song ”, and R. C. A.’s record from an album of songs hy Harry Belafonte with the title “ Day-0 ”, marketed as a single record — “Banana Boat (Day-O) ”, and (2) a record of a song “ Cindy-Oh-Cindy ”, that of plaintiff sung by Vince Martin and that of R. C. A. sung by Eddie Fisher. These two contentions will he treated in that order as presented at the trial.
*136 (1) The proof reveals beyond question that “ Banana Boat ” is a folk song of that name, sung for years in the Calypso manner in the West Indies. Words have varied; emphasis has varied; but the essentials of the “ Calypso ” sing-song patter and general tune have been established over the years. The title “ Banana Boat ”, on which plaintiff bases its entire case by the record of that name, “ Banana Boat Song ”, is found used for songs in 1945, 1949, 1954 and 1956 no 'less than seven times. Words and music have been separately 'registered and copyrighted. Another “Banana Boat Song ” was registered in 1957 as one of the “ all-time hit paraders ”. Another, entitled “ Day Dah Light ” with the subtitle “ Banana Loaders Song ” was copyrighted and sung in England in 1952 and appeared in a collection of “ Folk Songs of America ”. These and a host of other facts are set forth in meticulous detail in notices and demands served on plaintiff’s counsel pursuant to section 322 of the Civil Practice Act. They were served in successive notices from October to December, 1960. None was answered, nor any response made, served, or filed by plaintiff. The facts so set forth, calling for admissions, are amply supported and undisputed.
The records of plaintiff and defendant were played in court and carefully heard. Neither in words, tune or quality of song is the “ Banana Boat Song ” of plaintiff (sung by “ The Tarriers ”) comparable or similar to that of defendant B. C. A. (sung by Harry Belafonte). Both are pleasant entertainment. The title, which is the sole possible basis for plaintiff’s case in “ Banana Boat Song ” is without merit. It was not plaintiff’s creation; was not ‘1 original ’ ’; was not a right recognized under copyright law (nor so claimed by counsel for plaintiff) — but was in the public domain and so recognized for years. Monopolies of words and phrases in the English language are frowned upon by the law (Underhill v. Schenck, 238 N. Y. 7, 20; Futter v. Paramount Pictures, 69 N. Y. S. 2d 438; Brondfield v. Paramount Pictures Corp., 200 Misc. 883). Plaintiff Glory is at best only a nonexclusive licensee of the copyright proprietor of an arrangement of a song long in the public domain. The proprietor, Bryden Music Inc., has its name on the label of the record. No property right, as claimed, exists. (Supreme Records v. Decca Records, 90 F. Supp. 904, 909.) Nor has plaintiff shown any secondary meaning in its title ‘1 Banana Boat Song” in the public to warrant the relief sought. Its origin was not with plaintiff Glory. No imitation is shown. The name, repute, public popularity of R. C. A.’s Belafonte record, the color picture of this established artist, at his height of *137 popularity when this album and record was released — all undermine plaintiff’s claim (Gotham Music Serv. v. Denton & Haskins Music Pub. Co., 259 N. Y. 86, 89, 90; Crescent Tool Co. v. Kilborn & Bishop Co., 247 F. 299, 300; Kellogg v. National Biscuit Co., 305 U. S. 111). No one could possibly be confused into seeing, hearing or believing that B. C. A. ’s record was that of plaintiff. The ‘ ‘ functional title ’ ’ was not the sole property of plaintiff Glory (Vaughan Novelty Mfg. Co. v. Greene Mfg. Corp., 202 F. 2d 172, 176). No secondary meaning attached to plaintiff’s song — others with the same or similar titles, were, as shown, in the market, both before and after Glory’s single Banana Boat Song recording (Collins v. Metro-Goldwyn Pictures, 25 F. Supp. 781; International Film Serv. v. Associated Producers, 273 F. 585). Unfair competition has not been shown. R. C. A. did not “ copy ” any of the features of the “ Tarriers ” performance on Glory’s record. Belafonte’s Calypso album, his distinctive style, his actual recording of ‘ ‘ Day-O ’ ’, a Banana Boat Song, were in the market long before the record version of Glory’s Tarriers ’. At least six months had elapsed before plaintiff’s record was put out. Belafonte was a public record idol at the time. His popularity was conceded by plaintiff. When released out of the Calypso album as a single “ Banana Boat (Day-O) ” the Belafonte record was advertised and sold as a “ Belafonte ” record. In every form and style, words, music, cover, color, etc.— B. C. A. distinguished its record from any other, including plaintiff’s. The title “ Banana Boat ”, as shown, was not plaintiff’s exclusive property. (Crescent Tool Co. v. Kilborn & Bishop Co., 247 F. 299 [Learned Hand, J.], supra.)
(2) “ Cindy-Oh-Cindy ” is a lilting melody on a record released by plaintiff Glory about August 20, 1956. It was sung by Vince Martin, a high-pitch tenor. September 21, 1956 saw B. C. A.’s release of the same song by Eddie Fisher — excellent and wholly distinguishable from Vince Martin’s performance. In the case of this record, both plaintiff Glory and defendant B. C. A. had obtained a license from the same publisher. Here there is not the slightest case of any infringement or unfair comptetition. ‘ ‘ Covering ’ ’ the release of another company’s record by a different and better known artist is a well-established method of competition in this highly competitive field of the music business. The copyright act itself encourages this competition of an identical song (U. S. Code, tit. 17, § 1, subd. [e]; Report of House Committee on Patents: [H. R. Rep. 2222, 60th Congress, 2d Sess. — 1909]). The fact that B. C. A. sought to purchase Glory’s recording of ‘ ‘ Cindy:Oh-Cindy ’ ’ does not *138 create a cause of action based on its own record of the same song. There is no property right in a style, sound or form of rendition. (Supreme Records v. Decca Records, 90 F. Supp. 904, 906-907, supra; Kaplan, Performer’s Eight and Copyright, 69 Harv. Law Rev. 409, 427.) Glory by releasing its version of “ Cindy-Oh-Cindy ” could not bar a competitor from releasing another version of another singer for the consuming public. No such novel property right by the first public marketing of a song can be recognized. The public interest, recognized by the Congress of the United States in statutory form, will not be permitted to be undermined.
Popular records are much sought by disc jockeys and jukebox operators. These are the prime targets for the single record markets. Plaintiff gave away some 100,000 records "to distributors and another 1,000 to disc jockeys. Yet plaintiff’s own witness, Louis Baarstein, president of Leslie Distributors Inc., frankly admitted that Belafonte would outsell anyone in Calypso songs, particularly “ Banana Boat ” or other versions. His version would outstrip any other — and did so outstrip plaintiff’s record in 48 hours after release. The songs as recorded were played in this court. Belafonte’s (R. C. A.) “ Day-0 ” “ (Banana Boat Song) ” as a single record called “Banana Boat Song (Day-O) ” was performed and released under a license from Shari Music Corp. to R. C. A. (Victor Division) May 2, 1956. According to the music editor of “ Bill Board ”, Paul Ackerman, Belafonte was responsible for the wide popularity of Calypso songs; a number of versions of folk songs were carried from generation to generation, and “ Cover records ” constitute a basic form of recognized competition in the market of popular songs. The artist and his “ promotion” are far more important than the title of a song and the “ sleeve ” containing the record has become increasingly a factor in sales.
In the case of ‘ ‘ Cindy-Oh-Cindy ’ ’ plaintiff has failed utterly to present any evidence to support its claim of unfair competition. No new “ property right” in a particular version of a composition is subject to monoply. The only basis for plaintiff’s action here is that R. C. A. sought to purchase the Vince Martin version and then produced its own record with Eddie Fisher as the artist. This is not unfair competition. Complaint dismissed, with costs. Submit judgment.